**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOYCE K. MATSUO; SHARON
WARREN; RONALD FRANKLIN; FRANK
HARDT; RUSSELL HOLLAND; ROY
MATSUO; MICHAEL MCCRARY; FRED
NOLKE; CHARLES ROBERTS; RONALD
SCHERLER; ROMAN BUYSON; PETER
NEWMAN; THOMAS WARREN; JOHN
J. KATO; MICHAEL C. SHEARER, on
behalf of themselves and others
similarly situated,
              *Plaintiffs-Appellants,*

                  v.

UNITED STATES OF AMERICA; LINDA
M. SPRINGER,
              *Defendants-Appellees.*

No. 08-15553

D.C. No.
05-CV-000398-PMP

OPINION

Appeal from the United States District Court
for the District of Hawaii
Philip M. Pro, District Judge, Presiding

Argued and Submitted
May 13, 2009—Honolulu, Hawaii

Filed November 12, 2009

Before: Alex Kozinski, Chief Judge, Jay S. Bybee and
Consuelo M. Callahan, Circuit Judges.

Opinion by Chief Judge Kozinski

15223

## COUNSEL

Briefed and argued by Gregory K. McGillivary, Woodley & McGillivary, Washington, D.C., for the plaintiffs-appellants.

Argued by Michael Raab, Civil Appellate Division, U.S. Department of Justice, Washington, D.C., who was joined on the briefs by Gregory G. Katsas, Assistant Attorney General, Washington, D.C.; Edward H. Kubo, Jr., United States Attorney, Honolulu, Hawaii, and Mark R. Freeman, Civil Appellate Division, U.S. Department of Justice, Washington, D.C., for the defendants-appellees.

## OPINION

KOZINSKI, Chief Judge:

We decide whether the Federal Employees Pay Comparability Act of 1990, 5 U.S.C. § 5301 *et seq.*, imposes an unconstitutional burden on the right to travel.

### Facts

The Federal Employees Pay Comparability Act (the Act) provides certain federal employees in the contiguous 48 states with what is known as locality pay—an amount they are paid in addition to salary in order to equalize their compensation with that of other employees in the same region. 5 U.S.C. §§ 5301, 5304(f)(1)(A). The Office of Personnel Management establishes the amount of locality pay based on the degree of public-private pay disparity in each region. *See* 5 C.F.R. §§ 531.601-611. For example, this year federal employees in the New York City area will receive a locality adjustment equal to 27.96% of their base salary, while those in Atlanta will receive 18.55%. U.S. Office of Personnel Mgmt., *2009 General Schedule Locality Pay Tables*, http://opm.gov/oca/09tables/pdf/saltbl.pdf. Locality pay is included in the calculation of retirement benefits.

Roy Matsuo is a federal employee in Hawaii and is therefore ineligible for locality pay. 5 U.S.C. § 5304(f)(1)(A). Matsuo claims that, by denying him this benefit, the Act penalizes him for working in Hawaii, and this unconstitutionally burdens his right to travel.

Charles Roberts works in Maryland and, like most other federal employees in the 48 contiguous states, receives locality pay. He'd lose it if he returned to Hawaii, where he was a federal employee for a number of years before moving to Maryland. He claims that this unconstitutionally burdens his right to travel.

The parties stipulated to the certification of two classes[1]—one representing the Matsuos of the federal workforce, the other representing the Robertses—after which they filed cross-motions for summary judgment and the district court denied plaintiffs relief. Plaintiffs appeal.

## Analysis

We must determine whether the Act "actually deters . . . travel" or "uses any classification which serves to penalize the exercise of that right." *Attorney Gen. of N.Y.* v. *Soto-Lopez*, 476 U.S. 898, 903 (1986) (plurality opinion) (internal quotation marks and citations omitted).[2]

[1] **1.** Plaintiffs contend that federal employees in Alaska and Hawaii are compensated less than those on the mainland. The Act gives most federal employees, but not those stationed in Alaska and Hawaii, a minimum salary supplement of 13.86%; some get as much as 34.35%. U.S. Office of Personnel Mgmt., *2009 General Schedule Locality Pay Tables*, http://opm.gov/oca/09tables/pdf/saltbl.pdf. Employees outside the 48 contiguous states get nothing under the Act.

[2] Federal employees in Alaska and Hawaii do receive a geographically determined pay supplement called a cost-of-living allowance. 5 U.S.C. § 5941(a). This tax-free salary adjustment, first provided in some form in 1948, is only available to employees stationed outside the 48 contiguous states, and it's intended to compensate for the higher costs associated with living far from the mainland. *See* 13 Fed. Reg. 5453 (Sept. 16, 1948). This year employees in Alaska will receive a tax-free supplement equal to 23-25% of their salary, and

---

[1]The propriety of class certification is not before us, so we have no occasion to pass on it.

[2]Plaintiffs have provided no evidence that "impeding travel is [the Act's] primary objective," so we won't address that final prong of *Soto-Lopez*. *See* 476 U.S. at 903.

those in Hawaii will receive 18-25%. U.S. Office of Personnel Mgmt., *Non-Foreign Area Cost-of-Living Allowances*, http://www.opm.gov/oca/cola/html/C-rates.asp.

[3] **2.** In light of the above, federal employees (like Matsuo) who are now working in Alaska and Hawaii can't make the necessary threshold showing. The Act imposes no travel penalty on them; if anything, it imposes a penalty for staying put. In fact, the Act encourages these employees to travel by providing superior pay in the 48 contiguous states.[3] They therefore lack standing to bring a right-to-travel claim. *See Int'l Org. of Masters, Mates & Pilots* v. *Andrews*, 831 F.2d 843, 846 (9th Cir. 1987).

[4] The plaintiffs in *Andrews* were Washington residents who worked on Alaska's Marine Highway System and were paid less than their counterparts in Alaska. *Id.* at 844-45. They claimed that an Alaska statute was to blame for this disparity and that it violated their right to travel. *Id.* at 846. We held they had no standing to challenge the law because it didn't affect their "freedom to leave" Washington. *Id.* Similarly, plaintiffs who've always worked in Alaska or Hawaii have no standing to challenge the Act. They may be paid less than their counterparts in the 48 contiguous states, but the Act doesn't affect their "freedom to leave" Alaska or Hawaii.

[5] **3.** Plaintiffs (like Roberts) who work in the 48 contiguous states are in a different position. They would lose locality pay if they moved to Alaska or Hawaii and continued to work for the federal government,[4] so traveling would arguably trig-

---

[3]Moving between Alaska and Hawaii or to any location other than the mainland imposes no penalty. Federal employees in all of these places are governed by the same compensation scheme. *See* p. 15227 *supra*.

[4]Nothing prevents them from taking a locality-paying private-sector job. And there is, of course, no constitutional right to federal employment wherever one chooses to live. It's therefore not clear that these plaintiffs are suffering a cognizable injury at all.

ger a penalty.[5] But not everything that deters travel burdens the fundamental right to travel. States and the federal government would otherwise find it quite hard to tax airports, hotels, moving companies or anything else involved in interstate movement. We turn to *Saenz* v. *Roe*, 526 U.S. 489 (1999), for guidance about whether the Act's putative deterrent to travel burdens the constitutionally-protected right to travel.

[6] *Saenz* held that, unless a state can satisfy strict scrutiny, the constitutional right to travel prohibits it from: (1) preventing citizens from entering or leaving; (2) treating temporarily-present citizens of other states as "unfriendly aliens" rather than as "welcome visitors"; or (3) discriminating against citizens of other states who elect to become permanent residents. *Id.* at 500. But the states have no role in determining the compensation of federal employees. Neither can we say that the Act was an effort by Congress to "authorize the States to violate" one of these strictures. *Id.* at 507. The states aren't involved here at all, so the Act doesn't violate the right to travel as defined by *Saenz.*

Plaintiffs place heavy reliance on *Saenz*'s statement that "[t]he 'right to travel' discussed in our cases embraces *at least* three different components." *Id.* at 500 (emphasis added). While the right might have other components, being provided with the same federal benefits after moving as before isn't among them. *See Califano* v. *Torres*, 435 U.S. 1 (1978) (per curiam).

---

[5]These employees would gain the benefit of the tax-free cost-of-living allowance. *See* p. 15227 *supra*. But, as plaintiffs appear to see it, that is compensation for the higher cost of living in Alaska and Hawaii rather than on the mainland—something akin to a travel per diem—so it doesn't count for purposes of comparing salaries. If successful, plaintiffs don't merely intend to receive locality pay while keeping their cost-of-living allowance. They also seek to have their cost-of-living allowance counted towards retirement pay.

The plaintiff in *Torres* received Supplemental Security Income (SSI) payments while a resident of Connecticut.[6] 435 U.S. at 2-3. He moved to Puerto Rico and the Social Security Administration terminated his benefits because residents of Puerto Rico aren't eligible for SSI. Like plaintiffs here, he sued claiming that the SSI program violated his right to travel. A three-judge district court granted relief, but the Supreme Court reversed. It characterized the district court's order as holding that "a person who travels to Puerto Rico must be given benefits superior to those enjoyed by other residents of Puerto Rico if the newcomer enjoyed those benefits in the State from which he came." *Id.* at 4. This "altogether transposed" the right to travel, which the Court held merely requires that new residents of a state be given the same benefits as other residents. *Id.*[7]

*Torres* teaches that the right to travel permits the federal government to put new migrants to a state or territory on the same footing as that of long-established citizens. That is all that would occur should a plaintiff like Roberts move from the 48 contiguous states to Alaska or Hawaii. He would be denied locality pay because all federal employees in Alaska and Hawaii are denied locality pay. *Torres* forecloses a right-to-travel claim in such circumstances.

---

[6]SSI is a federally funded program that's directly administered by the federal government. *See Torres*, 435 U.S. at 2. It is thus closely analogous to the compensation program for federal employees.

[7]Puerto Rico does have a "relationship to the United States that has no parallel in our history." *Torres*, 435 U.S. at 3 n.4 (internal quotation marks omitted). That's not, as plaintiffs urge, sufficient to distinguish *Torres*'s discussion of the right to travel. The Court explained that "[f]or purposes of this opinion we may assume that there is a virtually unqualified constitutional right to travel between Puerto Rico and any of the 50 States of the Union," which is how the Court phrased the "right of interstate travel" earlier in its opinion. *Id.* at 4 n.6. The Court only relied on Puerto Rico's unique status to dispose of an equal protection claim. *See id.* at 3 n.4. Such a claim isn't properly before us. *See* note 8 *infra*.

The Eighth Circuit rejected a very similar claim. In *Minnesota Senior Fed'n* v. *United States*, plaintiffs challenged the geographical disparity in benefits under Medicare Part C. 273 F.3d 805, 810 (8th Cir. 2001). Addressing those plaintiffs' right-to-travel claim, the court held: "In effect, appellants argue that a federal program that fails to achieve nationwide uniformity in the distribution of government benefits is subject to strict scrutiny because it will deter travel to unfavored locales. Such a contention is clearly too broad." *Id.* Otherwise, choices Congress makes every day—where to build a military base, how much to allocate a state in highway funds, whether to provide a tax credit for this or that disaster area—would trigger strict scrutiny. That searching standard of review can't be appropriate merely because a federal program fails to provide geographically uniform benefits. Citizens of every state don't receive uniform benefits under many federal programs. Subjecting all those choices to strict scrutiny would undermine our constitutional scheme, which accords Congress primacy in spending decisions.

[7] **4.** Plaintiffs next contend that, even if the Act doesn't burden their fundamental right to travel, it must still be rationally related to a legitimate governmental interest. There is not, however, a free-floating requirement that all congressional action be rational. Unless a law creates a classification that plaintiffs complain denies them equal protection (and plaintiffs here have abandoned such a claim[8]) or the law burdens a liberty or property interest, Congress is free to act without being second-guessed by the courts. Without a right

---

[8]On appeal, plaintiffs don't claim that the Act's classification of employees based on the state in which they work is itself a denial of equal protection; they only claim this classification impermissibly burdens their right to travel. A claim based on the right to travel is distinct from an equal protection claim. *See, e.g.*, *Torres*, 435 U.S. at 3 n.4. Briefing the former doesn't properly raise the latter. *See, e.g.*, *Andrews*, 831 F.2d at 845 n.2. Even if we were to construe plaintiffs' brief as raising this claim, the Act clearly satisfies rational-basis scrutiny for the reasons stated by the district court.

to government employment in the first place, which plaintiffs don't argue exists, federal employees can have no judicially enforceable interest in pay at a particular rate. "The whole control of [federal employees' pay] is within the domain of congressional power." *Frisbie* v. *United States*, 157 U.S. 160, 166 (1895).[9]

**AFFIRMED.**

---

[9]Congress recently saw fit to exercise this power. Federal employees in Alaska and Hawaii will, after a phase-in period, receive locality pay instead of the cost-of-living allowance. *See* National Defense Authorization Act for Fiscal Year 2010, Pub. L. No. 111-84, § 1912, 123 Stat. 2190 (2009).